1  J. Mark Moore (SBN 180473)
   mark@spiromoore.com
2  Denise L. Diaz (SBN 159516)
   deniseldiaz@gmail.com
3  **SPIRO MOORE LLP**
   11377 W. Olympic Blvd., 5th Floor
4  Los Angeles, California 90064
   Tel.:   (310) 235-2468
5  Fax:   (310) 235-2456

6  Richard J. Doherty (admitted *pro hac vice*)
   rich@bockhatchllc.com
7  James M. Smith (admitted *pro hac vice*)
   james@bockhatchllc.com
8  **BOCK & HATCH LLC**
   134 N. LaSalle St., Suite 1000
9  Chicago, Illinois 60602
   Tel.:   (312) 658-5505
10 Fax:   (312) 658-5555

11 Attorneys for Plaintiff DAVID ROBERTS,
   individually and on behalf of others similarly situated

12

13            **UNITED STATES DISTRICT COURT**

14           **NORTHERN DISTRICT OF CALIFORNIA**

15

16 DAVID ROBERTS, individually and on behalf )   Case No.: CV12-00622-PJH
   of others similarly situated,             )
17                                           )   [Assigned to the Honorable Phyllis J. Hamilton
                              Plaintiff,     )   for all proceedings]
18                                           )
           vs.                               )   CLASS ACTION
19                                           )
   PAYPAL, INC., and DOES 1 through 10,      )
20 inclusive,                                )   **PLAINTIFF'S OPPOSITION TO MOTION**
                                             )   **OF DEFENDANT PAYPAL, INC. FOR**
21                           Defendants.     )   **SUMMARY JUDGMENT**
                                             )
22                                           )   Hearing Date:  April 24, 2013
                                             )   Time:          9:00 a.m.
23                                           )   Courtroom:     3, 3rd Floor
                                             )   Action Filed:  February 8, 2012
24 _____  )   Trial Date:    Not set

25

26

27

28

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................1

II.   UNDISPUTED FACTS .........................................................................................1

    A.   PayPal's User Agreements. ...........................................................................1

    B.   PayPal's text message advertising campaign and Plaintiff. ....................... 3

III.  LEGAL STANDARDS .........................................................................................4

    A.   Summary Judgment standard. ...................................................................... 4

    B.   Telephone Consumer Protection Act............................................................. 5

        1.   The Purpose of TCPA is to protect consumers. ............................... 5

        2.   The term "call" within the TCPA is ambiguous............................... 5

        3.   Prior express consent. ...................................................................... 6

        4.   Disclosures required to obtain clear and unmistakable express
            consent. ............................................................................................ 6

IV.   ARGUMENT ........................................................................................................8

    A.   Contractual interpretation of PayPal's User Agreement. ............................ 8

        1.   PayPal's User Agreement is an Adhesion Contract. ....................... 8

            i.    PayPal was required to make the first "Calls to You" clause
                conspicuous and clear, and bring it to Plaintiff's attention. .............. 8

            ii.   PayPal was legally obligated to ensure that its first "Calls to
                You" clause was not overly-harsh or one-sided. ............................... 9

            iii.  PayPal's first "Calls to You" clause was not conspicuous or
                clear, and was not brought to Plaintiff's attention, and the
                effect is overly-harsh. ...................................................................... 10

        2.   PayPal's Adhesion Contract, "Calls to You" and Ambiguity. .................... 11

    B.   Application of the TCPA and *Satterfield* to the "Calls to You" Clause
        Mandates Denial of PayPal's Motion........................................................ 13

    C.   Alleged Ambiguity in the User Agreement Does Not Satisfy PayPal's
        Burden. ...................................................................................................... 14

    D.   Authority Cited by Defendant is Misguided and Inapposite. .................... 15

V.    EVIDENCE SUBMITTED BY PAYPAL IS INADMISSIBLE .......................18

    Objections to Declaration of John Muller .......................................................... 18

**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT
PAYPAL, INC. FOR SUMMARY JUDGMENT**

1.    Objection to Entirety of Muller Decl..................................................... 18

2.    Muller Decl., ¶ 5, third sentence........................................................ 19

3.    Muller Decl., ¶ 5, final sentence ("PayPal also makes its User Agreement available to its users and the public through a "Legal Agreements" link that appears on every page of the PayPal.com website.").................................................................................. 19

4.    Muller Decl., ¶ 7, second sentence ("According to PayPal records, Mr. Roberts created the Account and agreed to and accepted the User Agreement on September 13, 2002 at 12:21:54 Pacific Daylight Time.")........................................................................................ 19

5.    Muller Decl., Exhibit A (alleged "Activity Log.")..................................... 19

6.    Muller Decl., ¶ 9, second sentence ("A true and correct copy of the revised version of the User Agreement which Mr. Roberts accepted is attached hereto as Exhibit C.")........................................................ 20

7.    Muller Decl., ¶ 11, second sentence ("PayPal posted [the 2010 User Agreement] on November 1, 2010.").......................................... 20

8.    Muller Decl., ¶ 11, third sentence   ("The November 1, 2010 User Agreement provides, in pertinent part:  "1.9  Calls to You; Mobile Telephone Numbers.   By providing PayPal a telephone number (including a wireless/cellular telephone), you consent to receiving autodialed and prerecorded message calls from PayPal at that number.")................................................................................ 20

9.    Muller Decl., ¶ 15 ("Exhibit A hereto indicates that Mr. Roberts has not identified another phone number since adding his Cell Number as his primary telephone number on December 8, 2010.) ............................... 21

VI.    CONCLUSION ............................................................................21

**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT PAYPAL, INC. FOR SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)...............................................................4

*Badie v. Bank of America*, 67 Cal. App. 4th 779, 801 (1st Dist. 1998)......................................11, 15

*Bauer v. Jackson*, 15 Cal. App. 3d 358, 370, 93 Cal. Rptr. 43 (Ct. App. 1971) ..........................9, 14

*Bonime v. Avaya, Inc.*, 547 F.3d 497, 499 (2nd Cir. 2008) ....................................................................5

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir., 2010)..................................................................................................................................................9

*Cavero v. Franklin Collection Service Inc.*, Case No. 11-22630, 2012 WL 279448 (S.D.Fla., Jan. 31, 2012) ...................................................................................................17

*Comm'rs of IRS v. Duberstein*, 363 U.S. 278, 289 (1960) ....................................................................5

*Cunningham v. Credit Mgmt., L.P.*, Case No. 3:09-cv-1497, 2010 WL 3791104 (N.D.Tex., Aug. 30, 2010) ...................................................................................................................17

*Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000)......................................4, 13

*Frausto v. IC System, Inc.*, Case No. 10 CV 1363, 2011 WL 3704249 (N.D.Ill., Aug. 22, 2011)(Zagel, J.).........................................................................................................................16

*Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 820 (1981) ....................................................................8

*Grant v. Capital Mgmt. Servs., L.P.*, No. 11-56200, 2011 WL 3874877 at *1 (9th Cir., Aug. 31, 2011)..........................................................................................................................6, 13

*Greene v. Directv, Inc.*, Case No. 10 C 117, 2010 WL 4628734 (N.D.Ill., Nov. 8, 2010) ..............17

*Gutierrez v. Barclays Group*, Case No. 10cv1012, 2011 WL 579238 at *1-4 (S.D.Cal., Feb. 9, 2011)(Sabraw, J.).........................................................................................................16

*Ibey v. Taco Bell Corp.*, Case No. 12-CV-0583, 2012 WL 2401972 (S.D.Cal., June 18, 20120)(Hugg, J.).......................................................................................................................17

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14115 (July 3, 2003)............................................................................5

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C.R. 8752, 1992 WL 690928 (Oct. 16, 1992) .........................................................15, 16

*In re: Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, ¶ 9 (F.C.C. 2007)..................................................................................................16

*In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C.R. 1830 at 1831 & 1838 (Feb. 15, 2012) ..............................................7, 14

**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT
PAYPAL, INC. FOR SUMMARY JUDGMENT**

*In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* SoundBite Communications, Inc. Petition for Expedited Declaratory Ruling, CG Docket No. 02-278 (Nov. 29, 2012) ................................................................7

*Lake Nacimiento Ranch Co. v. San Luis Obispo County*, 841 F.2d 872, 875 (9th Cir. 1987) ......5, 12

*Leckler v. Cashcall, Inc.*, 554 F.Supp.2d 1025 (N.D.Cal., May 20, 2008)(Illston, J.) .....................6

*Los Angeles Inv. Co. v. Home Savings Bank of Los Angeles*, 180 Cal. 601, 613 (1919) .............9, 10

*Moise v. Credit Control Services, Inc.*, Case No. 11-60026-CIV (S.D.Fla., Oct. 18, 2011).............16

*Newton v. American Debt Services, Inc.*, 854 F. Supp. 2d 712, 722 (N.D.Cal., 2012) ......................9

*Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1126 (5th Cir. 1978) ...................................5, 13

*Osorio v. State Farm Bank, F.S.B.*, 859 F.Supp.2d 1326 (S.D.Fla. 2012) .......................................17

*Perez-Encinas v. Amerus Life Ins. Co.*, 468 F. Supp. 2d 1127, 1133 (N.D.Cal., 2006).............11, 12

*Pinkard v. Wal-Mart Stores, Inc.*, No. 3:12-cv-02902, 2012 WL 5511039 (N.D.Ala., Nov. 9, 2012)(Smith, J.) ........................................................................................18

*Sankovich v. Life Ins. Co. of N. America*, 638 F.2d 136, 140 (9th Cir. 1981)............................4, 12

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)........................5, 6, 13, 15

*Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976, 983 (9th Cir. 2007)................8, 10

*Starkey v. Firstsource Advantage, LLC*, Case NO. 07-cv-662A, 2010 WL 2541756 (W.D.N.Y., March 11, 2010)................................................................................16

*Stiener v. Apple Computer, Inc.*, 556 F. Supp. 2d 1016, 1024 (N.D.Cal., 2008) ........................8, 10

*Wheeler v. St. Joseph Hospital*, 63 Cal. App. 3d 345, 357 (4th Dist., 1976) .....................8, 9, 10, 14

**Statutes**

47 U.S.C. § 227(b)(1)(A)(iii)................................................................................................5

**Other Authorities**

S. Rep. 102-178, 1991 WL 211220 at *1 (Oct. 8, 1991)................................................................5

**Rules**

Fed. R. Civ. P. 56(a) .......................................................................................................4

Fed. R. Civ. P. 56(e) .......................................................................................................18

Fed. R. Evid. 602 ...........................................................................................................18

Fed. R. Evid. 803(6) .......................................................................................................20

Local Rule 7-5(b) .......................................................................................................18, 20

**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT
PAYPAL, INC. FOR SUMMARY JUDGMENT**

1

**Regulations**

2

16 C.F.R. § 310.1........................................................................................................7

3

77 Fed. Reg. 63340....................................................................................................7

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT
PAYPAL, INC. FOR SUMMARY JUDGMENT**

1    Plaintiff David Roberts ("Roberts" or "Plaintiff"), individually and on behalf of others

2    similarly situated, hereby responds in opposition to the Motion for Summary Judgment (the

3    "Motion") of Defendant PayPal, Inc. ("PayPal" or "Defendant").

4

## I.    INTRODUCTION

6    The primary issue presented by the Motion is whether ambiguous language - "you consent

7    to receiving autodialed and pre-recorded message calls" – inserted by PayPal into its adhesion

8    User Agreement, constitutes a disclosure sufficient to satisfy PayPal's affirmative burden of

9    proving that Plaintiff and the class clearly and unmistakably stated their prior express consent to

10   receiving PayPal's advertising text messages.  PayPal has failed to meet its burden as Plaintiff

11   never consented to receive the subject text message advertisement.  Standing alone, the PayPal

12   User Agreement – which does not include the phrase text messages – does not constitute both the

13   disclosure and consent required here under basic principles of contract law, much less the increased

14   standards required pursuant to the Telephone Consumer Protection Act ("TCPA") and the Federal

15   Communication Commission ("FCC") rules.  In a tacit acknowledgment of that fact, PayPal's

16   motion is largely premised upon its insistence that this Court ignore the plain language of the User

17   Agreement, and instead import the consumer protections of the 9th Circuit's *Satterfield* holding

18   into the User Agreement, albeit with a critical twist that requires the same word – "calls" – to mean

19   the same thing for the purpose of achieving the opposite result: the insulation of PayPal from

20   liability for its patent failure to use clear and unmistakable language alerting consumers that they

21   will be subject to Paypal's text message advertising campaign.  This is impermissible and Paypal's

22   motion should be denied.

23

## II.    UNDISPUTED FACTS

25    ### A.    PayPal's User Agreements.

26    Plaintiff became a PayPal customer in September 2002 and was subject to PayPal's then 34-

27   page "User Agreement for PayPal™ Service." (Declaration of James M. Smith ("Smith Dec."),

28   Exhibit C ("Muller Confidential Dep.) at 21:3-14, Ex. 4; Exhibit A ("Roberts Dec.") at ¶ 2. The

**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT
PAYPAL, INC. FOR SUMMARY JUDGMENT**

September 2002 User Agreement did *not* include the "Calls to You" paragraph relied upon in

PayPal's motion for summary judgment; rather, it included an "Electronic Communications" clause

that mandated Plaintiff would only be contacted by Defendant via postings on the PayPal website

or via email ("[Plaintiff] agree[s] to receive all Communications from PayPal in electronic form.

Electronic Communications may be posted on the pages within the PayPal website and/or delivered

to your e-mail address." Smith Dec., Exhibit B ("Muller Dep.") at 13-15, Ex. 3.) The requirement

that PayPal communicate with Plaintiff solely via its website or e-mail was present in PayPal's

User Agreements until November 10, 2008. (Muller Confidential Dep. at 22:9-14)

On November 10, 2008, PayPal unilaterally changed the terms of its User Agreement so

that PayPal could "Call" Plaintiff and its other users by telephone:

> Calls to You. By providing PayPal a telephone number (including a
> wireless/cellular telephone), you consent to receiving autodialed and
> prerecorded message calls from PayPal at that number. (Muller Dep.
> at Ex. 7)

As shown by Muller Dep. at Ex. 7, when viewed in the context of the entire User

Agreement, PayPal's first "Calls to You" clause was inconspicuously inserted on page 3 of a 38

page agreement, in a type font no different than any surrounding language. The "Calls to You"

clause remained materially the same until May 24, 2011, when PayPal unilaterally changed it once

again:

> Calls to You; Mobile Telephone Numbers. By providing PayPal a
> telephone number (including a mobile telephone number), you
> consent to receiving autodialed and prerecorded message calls from
> PayPal at that number. If we determine that a telephone number you
> have provided to us is a mobile telephone number, we may categorize
> it as such in our systems and in your Account Profile, and you
> consent to receive text messages from us about your use of the
> PayPal services at that number. (Muller Dep. at Ex. 8)

As with the previous "Calls to You" clause, the new clause ("the second "Calls to You"

clause") was also inconspicuously inserted on page 2 of a 26 page User Agreement, in a type font

no different than any surrounding language. (Muller Dep. at Ex. 8).

PayPal unilaterally changed the "Calls to You" clause a third time on November 1, 2012

("the third "Calls to You" clause") (Muller Dep. at Ex. 9):

**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT
PAYPAL, INC. FOR SUMMARY JUDGMENT**

Calls to You; Mobile Telephone Numbers. Section 1.10 is being updated to state:

By providing PayPal a telephone number (including a mobile telephone number), you agree to receive autodialed and prerecorded message calls at that number. The ways in which you provide us a telephone number include, but are not limited to, providing a telephone number at Account opening, adding a telephone number to your Account at a later time, providing it to one of our employees, or by contacting us from that phone number. If a telephone number provided to us is a mobile telephone number, you consent to receive SMS or text messages at that number. We won't share your phone number with non-affiliated third parties for their purposes without your consent, but may share your phone number. We may share your phone numbers with our Family of Companies or with our service providers, such as billing or collections companies, who may contact you using autodialed or prerecorded message calls or text messages. Standard telephone minute and text charges may apply if we contact you. (Muller Dep. at Ex. 9)

The PayPal User Agreements are standardized agreements; no interaction occurred between Plaintiff and the class, on the one hand, and PayPal, on the other hand, that led to the User Agreements. (Muller Dep. at 19:21-20:6). PayPal acknowledges that the User Agreements are a "take it or leave it" proposition for its users. (Muller Dep. at 20:3-6). Plaintiff could never negotiate with PayPal regarding the terms of the various User Agreements. (Muller Dep. at 19:21-20:6). Moreover, since 2003, PayPal made many changes to its User Agreements (Muller Dep. at 16:4-10), but it has no way of knowing whether any of its users read, reviewed, or understood any of those changes. (Muller Dep. at 18:15-25).

**B.      PayPal's Text Message Advertising Campaign and Plaintiff.**

In approximately 2006, PayPal created a "mobile payment group" to generate business through mobile devices. (Muller Confidential Dep. at 26:12-27:3). PayPal's mobile payment group found ways to "encourage" its users to conduct additional business with PayPal through their mobile devices. (*Id*.). PayPal's general counsel and vice president testified that PayPal sent advertising texts to its users as early as September 2008, which is after insertion of the "Electronic Communications" clause restricting customer contact to the website and email, but *before* insertion of the first "Calls to You" clause. (Muller Dep. at 42:1-3). Approximately two years after the insertion of the first "Calls to You" clause, on December 8, 2010, Plaintiff was prompted to, and did, give PayPal his mobile phone number. (Roberts Dec. at ¶ 3). As shown by the evidence

Page 3

1   produced in this litigation, when Plaintiff entered his mobile phone number into PayPal's system

2   (11:35am PST on December 8, 2010), the webpage prompting him to do so contained no reference

3   to autodialed or pre-recorded calls, text messages, or PayPal's terms and conditions and required no

4   stated consent or acquiescence (e.g., via a checked box signifying agreement, or so-called "click-

5   wrap" feature) by Plaintiff which in any way disclosed to Plaintiff that he was agreeing to become

6   the target of PayPal's text message advertising campaign. (Muller Confidential Dep. at 27:4-8, Ex.

7   4). However, at the same moment (11:35am PST on December 8, 2010) Plaintiff received PayPal's

8   unsolicited text message advertisement.  (Roberts Dec. at ¶ 6, Ex. 1). PayPal implemented a

9   program that would instantly send advertising text messages to any customer that entered their

10  mobile telephone number into the PayPal system. (Muller Confidential Dep. at 25:4-18). Therefore,

11  before Plaintiff entered his mobile number, PayPal knew it was going to send him a text message

12  advertisement and did so, within seconds. (Muller Confidential Dep. at 25:4-18; Ex. 4; Roberts

13  Dec. at ¶ 6, Ex. 1). Despite the fact that PayPal sent these unsolicited text message advertisements

14  since before September 2008 (Muller Dep. at 42:1-3), PayPal never updated its program to obtain

15  express consent to send these unsolicited text message advertisements. (Muller Confidential Dep. at

16  27:4-8).

17

18  **III.    LEGAL STANDARDS**

19      **A.    Summary Judgment Standard.**

20          Courts must act "with caution in granting summary judgment." *Anderson v. Liberty Lobby,*

21  *Inc.*, 477 U.S. 242, 255 (1986). Summary judgment may not be granted when there is a "genuine

22  dispute" as to any "material fact."  Fed. R. Civ. P. 56(a). A factual dispute is "genuine" where "the

23  evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The

24  Court must view the evidence in the light most favorable to the non-moving party. *Fairbank v.*

25  *Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). Where different ultimate inferences

26  may be drawn, summary judgment is inappropriate.  *Sankovich v. Life Ins. Co. of N. America*, 638

27  F.2d 136, 140 (9th Cir. 1981). Summary Judgment should be denied if reasonable minds could

28  differ on the inferences to be drawn from undisputed facts. *Lake Nacimiento Ranch Co. v. San Luis*

**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT**
**PAYPAL, INC. FOR SUMMARY JUDGMENT**

1    *Obispo County*, 841 F.2d 872, 875 (9th Cir. 1987). Where the inference to be drawn requires

2    "experience with the mainsprings of human conduct" and "reference to the data of practical human

3    experience," the jury must make the determination and summary judgment is improper. *Nunez v.*

4    *Superior Oil Co.*, 572 F.2d 1119, 1126 (5th Cir. 1978) *quoting Comm'rs of IRS v. Duberstein*, 363

5    U.S. 278, 289 (1960).

6        **B.    Telephone Consumer Protection Act.**

7            **1.    The Purpose of TCPA is to Protect Consumers.**

8        "It shall be unlawful for any person within the United States … (A) to make any call (other

9    than a call made for emergency purposes or made with the prior express consent of the called party)

10   using any automatic telephone dialing system or an artificial or prerecorded voice … (iii) to any

11   telephone number assigned to a paging service, cellular telephone service …" 47 U.S.C. §

12   227(b)(1)(A)(iii).

13       The TCPA was enacted to "protect the privacy interests of residential telephone

14   subscribers." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) *quoting* S.

15   Rep. 102-178, 1991 WL 211220 at *1 (Oct. 8, 1991). *See also Bonime v. Avaya, Inc.*, 547 F.3d

16   497, 499 (2nd Cir. 2008). "The Committee believes that Federal legislation is necessary to protect

17   the public from automated telephone calls." S. Rep. 102-178, 1991 WL 211220 at *5.

18           **2.    The Term "Call" Within the TCPA is Ambiguous.**

19       As used in the plain language of the TCPA, the term "call" is ambiguous. *Satterfield*, 569 at

20   953-54. However, "call" as used in the TCPA has been construed to encompass text messages

21   because that construction broadens the consumer protections of the statute and is therefore

22   "consistent with the purpose of the TCPA." *Satterfield*, 569 F.3d at 954 *citing In re Rules and*

23   *Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014,

24   14115 (July 3, 2003). ("We affirm that under the TCPA, it is unlawful to make *any call* using an

25   automatic telephone dialing system or an artificial or prerecorded message to any wireless

26   telephone number…This encompasses both voice calls and text calls to wireless numbers…"

27   (italics included in original)).

28

**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT**
**PAYPAL, INC. FOR SUMMARY JUDGMENT**

### 3.   Prior Express Consent.

Prior "express consent is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof." *Grant v. Capital Mgmt. Servs., L.P.*, No. 11-56200, 2011 WL 3874877 at *1 (9th Cir., Aug. 31, 2011). Defendant's burden requires that it prove it obtained "consent that is clearly and unmistakably stated" by the consumer prior to sending the consumer a text message.  *Satterfield*, 569 F.3d at 955.

### 4.   Disclosures Required to Obtain Clear and Unmistakable Express Consent.

Whether a consumer has clearly and unmistakably stated their prior express consent to receive a text message inevitably begs inquiry into the form of any ostensible disclosure or procedure requesting such consumer consent. Under the TCPA, obtaining prior express consent, generally, to receive calls is not enough. *Leckler v. Cashcall, Inc.*, 554 F.Supp.2d 1025 (N.D. Cal., May 20, 2008)(Illston, J.) order vacated pursuant to the Hobbs Act, 28 U.S.C. § 2342, No. C 07-04002, 2008 WL 5000528 (N.D. Cal., Nov. 21, 2008)(Illston, J.)("If the exemption were to apply whenever a called party gave prior consent to be called in general, without any consideration given to the method or type of call, the exemption would be contrary to the logic of the [TCPA]. *Id.* at 1030.)

The need for increased and standardized disclosure and consent has been recognized by both the burgeoning mobile telemarketing industry and the FCC.  For example, the Mobile Marketing Association ("MMA"), which "is the premier global non-profit trade association established to lead the growth of mobile marketing and its associated technologies," requires its members to obtain consent "for a specific messaging program" and admonishes that they should "limit mobile messages to that which users have requested."  Smith Dec., Ex. D ("MMA Dec.") at Ex. 1. The MMA further states that consumer "consent is not carried into other programs unless the user has consented to such communications…" (*Id.*). The MMA guidelines have been cited to by the FCC as authoritative on issues related to text message advertising. *See e.g., In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* SoundBite

**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT
PAYPAL, INC. FOR SUMMARY JUDGMENT**

1    Communications, Inc. Petition for Expedited Declaratory Ruling, CG Docket No. 02-278 (Nov. 29,

2    2012). PayPal, it is worth noting, is a member of the MMA. (MMA Dec. at ¶ 2; Ex. 4).

3         The FCC has also weighed in with rules that reinforce and expand upon both *Satterfield* and

4    the MMA guidelines.  The FCC's rules – which go into effect a few months from now – reinforce

5    *Satterfield's* call for clear and unmistakable (the FCC uses the term clear and conspicuous)

6    disclosure by mobile marketers of the intent to send text messages and introduce the requirement

7    for written consent by consumers to receive them, and were motivated by a need to clarify the

8    harmony intended by Congress between the TCPA and the Federal Trade Commission's analogous

9    Telemarketing Sales Rule (16 C.F.R. § 310.1), which has long required such disclosure by

10   telemarketers and consent by consumers.[1]  "[B]ased on substantial record support and evidence of

11   continued consumer frustration," and drawing a particular distinction between "wireless numbers"

12   as opposed to  "residential lines", the FCC requires prior express "written" consent for all

13   automatic telephone calls, including text calls.  *In re: Rules and Regulations Implementing the*

14   *Telephone Consumer Protection Act of 1991*, 27 F.C.C.R. 1830 at 1831, 1838 (Feb. 15, 2012). As

15   of October 16, 2013, the FCC will require that callers make a "clear and conspicuous disclosure of

16   the consequences of providing the requested consent" from a consumer to receive text messages,

17   which consent must take the form of a "written agreement" from the consumer.  *Id*. at 1843, 1857;

18   and 77 Fed. Reg. 63340.  "In addition, the written agreement must be obtained 'without requiring,

19   directly or indirectly, that the agreement be executed as a condition of purchasing any good or

20   service.'" *Id*.  It will be the caller's burden to prove that a "clear and conspicuous disclosure" was

21   provided and an "unambiguous consent" in writing was obtained.  *Id*. at 1844.

22   ///

23   ///

24   ///

25   ///

26

27   _____

[1] The FTC determined it is an abusive telemarketing practice for a seller or telemarketer to initiate
28   an outbound telephone call that delivers a prerecorded telemarketing message unless, among other
things, the seller has previously obtained the recipient's signed, written agreement to receive such
calls. *Telemarketing Sales Rule*, Final Rule Amendments, 73 Fed. Reg. 51164-66 (2008).

**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT
PAYPAL, INC. FOR SUMMARY JUDGMENT**

1    **IV.    ARGUMENT**

2        A.    **Contractual Interpretation of PayPal's User Agreement.**

3            1.    **PayPal's User Agreement is an Adhesion Contract.**

4        "Under California law, a contract of adhesion is defined as 'a standardized contract,

5    imposed upon the subscribing party without an opportunity to negotiate the terms.'" *Stiener v.*

6    *Apple Computer, Inc.*, 556 F. Supp. 2d 1016, 1024 (N.D.Cal., 2008) *quoting Shroyer v. New*

7    *Cingular Wireless Services, Inc.*, 498 F.3d 976, 983 (9th Cir. 2007). "A determination that a

8    contract is adhesive is merely the beginning and not the end of the analysis insofar as enforceability

9    of its terms is concerned." *Wheeler v. St. Joseph Hospital*, 63 Cal. App. 3d 345, 357 (4th Dist.,

10    1976). "The general proposition that a person who signs a contract is bound by all of its terms even

11    though he signed it without reading it may not be given full sweep where the contract is one of

12    adhesion." *Id.* at 359. There are two general limitations on the enforcement of adhesion contracts:

13    (1) the contract or provision does not meet the reasonable expectations of the weaker party; and (2)

14    the contract or provision is unconscionable. *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 820

15    (1981); *Wheeler*, 63 Cal. App. 3d at 357 ("Enforceability depends on whether the terms of which

16    the adherent was unaware are beyond the reasonable expectations of an ordinary person or are

17    oppressive or unconscionable.").

18
            i.    **PayPal Was Required to Make the First "Calls to You" Clause**
19            **Conspicuous and Clear, and Bring It to Plaintiff's Attention.**

20        With regard to the reasonable expectations of the weaker party, courts must determine

21    "what the weaker contracting party could legitimately expect . . ., and to what extent the stronger

22    party disappointed reasonable expectations based on the typical life situation." *Wheeler*, 63 Cal.

23    App. 3d at 359. "Where a contractual provision would defeat the 'strong' expectation of the

24    weaker party, it may also be necessary to call his attention to the language of the provision." *Id.*

25    An agreement to arbitrate an issue, for example, must be made "clearly and unmistakably." *Id.* at

26    357. However, "[w]here the contract is one of adhesion, conspicuousness and clarity of language

27    alone may not be enough to satisfy the requirement of awareness." *Id.* at 359. For certain

28    contractual terms, the weaker party must affirmatively consent to the term or have it brought to his

**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT
PAYPAL, INC. FOR SUMMARY JUDGMENT**

or her attention. *Los Angeles Inv. Co. v. Home Savings Bank of Los Angeles*, 180 Cal. 601, 613

(1919).

> [I]t is evident that the statement comes in the category of 'traps for the unwary,' and before such statement can be given effect as a contract binding upon the [party] and changing in substantial particular the relation which presumably he thought he was entering into, it must appear affirmatively that he consented and agreed to it either by being required to sign it or by having his attention particularly called to it. *Id.*

"[I]f the language of such provision is too complicated or subtle for an ordinary layman to

understand, he should also be given a reasonable explanation of its implications." *Wheeler*, 63 Cal.

App. 3d at 359. "However, with respect to standardized adhesion contracts between parties of

unequal bargaining strength, exclusionary clauses and provisions limiting liability have been held

to be ineffective in the absence of 'plain and clear notification to the public' and 'an understanding

consent.'" *Bauer v. Jackson*, 15 Cal. App. 3d 358, 370, 93 Cal. Rptr. 43 (Ct. App. 1971) "A

provision which limits the duties or liability of the stronger party will not be enforced against the

forced adherent absent "plain and clear notification" of the terms and an 'understanding consent'

thereto." *Wheeler,* 63 Cal. App. 3d at 357.

### ii. PayPal Was Legally Obligated to Ensure That Its First "Calls to You" Clause Was Not Overly-Harsh or One-Sided.

With regard to unconscionability, "[i]n California, a contractual clause is unenforceable if it

is both procedurally and substantively unconscionable." *Newton v. American Debt Services, Inc.*,

854 F. Supp. 2d 712, 722 (N.D.Cal., 2012) *citing Flores v. Transamerica HomeFirst, Inc.*, 93

Cal.App.4th 846, 853 (1st Dist., 2001). "California law treats contracts of adhesion, or at least

terms over which a party of lesser bargaining power had no opportunity to negotiate, as

procedurally unconscionable…" *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622

F.3d 996, 1004 (9th Cir., 2010). "Substantive unconscionability focuses on 'the effects of the

contractual terms and whether they are overly harsh or one-sided.'" *Newton*, 854 F. Supp. 2d at 724

*quoting Flores*, 93 Cal.App.4th at 853.

///

///

///

**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT
PAYPAL, INC. FOR SUMMARY JUDGMENT**

1

          **iii.**      **PayPal's First "Calls to You" Clause Was Not Conspicuous or**

2

                    **Clear, and Was Not Brought to Plaintiff's Attention, and the**
                    **Effect is Overly-Harsh.**

3        Here, PayPal's User Agreements are standardized contracts, imposed by it – in the position

4  of greater bargaining power – upon Plaintiff and the putative class, who are in the weaker position,

5  and had no opportunity to negotiate the User Agreement. (Muller Dep. at 19:21-20:6).  As such, the

6  User Agreements are unquestionably classic contracts of adhesion. *Steiner, supra; Shroyer, supra*.

7  Setting aside questions of ambiguity and the greater disclosure and consent requirements placed

8  upon PayPal by the TCPA and *Satterfield*, the issue in the first instance is whether the first "Calls

9  to You" clause is unreasonable or unconscionable based purely upon principles of contractual

10  interpretation. Plaintiff submits that the first "Calls to You" clause is both unreasonable and

11  unconscionable.

12        The "reasonable expectations based on the typical life situation" (*Wheeler, supra*) of a

13  consumer subject to PayPal's User Agreement would not be that the first "Calls to You" clause

14  includes text messages.  Even if that were the case, it would still be necessary for PayPal to "call

15  attention to the language of the provision" purportedly allowing text messaging (*Id.*), which clearly

16  has not occurred.  As with agreements to arbitrate (even when they actually mention the word

17  "arbitration"), clear and unmistakable disclosure must be made (*Id.*) and affirmative consent must

18  be stated to compel enforcement of such an adhesion contract.  *Los Angeles Inv. Co., supra*. This is

19  particularly the case where the contractual language at issue is "complicated or subtle." *Wheeler,*

20  *supra*, at 359.  Such is the case here, where the term "autodialed or pre-recorded message calls" can

21  easily be seen by the weaker contracting party as either too complicated to mean text messages, or

22  – more obviously - too subtle, in that it does not simply state what Paypal purports it meant to say.

23  Moreover, PayPal never made sure Plaintiff read, reviewed or understood the first "Calls to You"

24  clause.  As a result, PayPal failed to bring the clause to Plaintiff's attention. This makes PayPal's

25  first "Calls to You" clause both unreasonable and unconscionable. Therefore Defendant's Motion

26  should be denied.

27  ///

28  ///

**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT**
**PAYPAL, INC. FOR SUMMARY JUDGMENT**

## 2.   PayPal's Adhesion Contract, "Calls to You" and Ambiguity.

To determine the "mutual intention" of parties through a contract, the court must first look to the language of the contract to ascertain the "plain meaning or the meaning a layperson would ordinarily attach to it." *Perez-Encinas v. Amerus Life Ins. Co.*, 468 F. Supp. 2d 1127, 1133 (N.D.Cal., 2006). A provision of the contract "will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *Id.* If plain meanings do not resolve the ambiguities, the court is to look at the "objectively reasonable expectations" of the non-drafter. *Id.* If the reasonable expectation does not resolve the ambiguity, then the ambiguity must be interpreted against the drafter. *Id.* "Finally, if the uncertainty is not removed by application of the other rules of interpretation, a contract must be interpreted most strongly against the party who prepared it. *This last rule is applied with particular force in the case of adhesion contracts.*" *Badie v. Bank of America*, 67 Cal. App. 4th 779, 801 (1st Dist. 1998)(citations omitted, emphasis added).

Here, the issue is whether the language - "you consent to receiving autodialed and pre-recorded message calls" – inserted by PayPal into its adhesion User Agreement is ambiguous.  As dealt with below, the crucial premise of PayPal's Motion is that the language *is* ambiguous pursuant to the 9th Circuit's decision and the FCC's interpretation of the word "call" and, moreover, that PayPal is entitled to have that ambiguity interpreted in its favor, rather than in favor of Plaintiff, which is clearly impermissible. *Id.* First, however, the Court should consider that the terms at issue are not ambiguous in that they clearly exclude text messages and deny PayPal's Motion on that basis alone.

In order to understand the "plain" or "ordinary" meaning of the first "Calls to You" clause it helps to place it in its proper context: the initial clause regarding communications with Plaintiff restricted contact to the PayPal website and email and made no reference to "calls" of any kind (Muller Dep. at 13-15, Ex. 3); the second and third variations of the "Calls to You" clause not only specifically reference "text messages," but distinguish text messages from "autodialed and pre-recorded message calls" made to mobile phones, which are dealt with in a separate sentence. (Muller Dep. at Exs. 8 & 9). Because the first "Calls to You" clause is sandwiched between a clause that prohibits calls and clauses that distinguish "calls" from text messages, it is entirely

**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT
PAYPAL, INC. FOR SUMMARY JUDGMENT**

1    reasonable to view the "plain" or "ordinary" meaning to a "layperson" for the word "calls" as used

2    in the first "Calls to You" clause to mean a voice-call. In fact the testimony in this case is that

3    Plaintiff understands "autodialed and prerecorded message calls" to be limited to a voice-call.

4    (Roberts Dec. at ¶ 7). Plaintiff's understanding is reasonable.

5         Beyond the "plain" or "ordinary" meaning of the first "Calls to You" clause, additional

6    factors indicate that Plaintiff would have never understood that PayPal was attempting to obtain

7    permission from Plaintiff to send him a text message advertisement. Despite the fact that Plaintiff

8    gave PayPal his mobile number, he never anticipated PayPal would call him other than to discuss a

9    potential problem with a future online transaction. (Roberts Dec. at ¶ 4). Plaintiff never consented

10   for PayPal to send him a text message of any kind. (Roberts Dec. at ¶ 5). Prior to receiving

11   PayPal's text message advertisement, Plaintiff had never received any other commercial text

12   messages of any kind. (Roberts Dec. at ¶ 6). As a result, Plaintiff had no reason to be on the

13   lookout for a clause that would allow PayPal to communicate with Plaintiff in a way that PayPal

14   never did in the previous six (6) years, or in a way that no company – ever – communicated with

15   him during his entire lifetime. The inclusion of the first "Calls to You" clause certainly would not

16   alert Plaintiff that for the first time in his life, a company was going to send him a text message

17   advertisement.

18        Even if the word "calls" were found to be ambiguous, if two or more reasonable

19   constructions can apply (here, that the phrase "autodialed and prerecorded message calls" includes

20   both "telephone calls" and "text messages"), that ambiguity must be interpreted against PayPal.

21   Other possibilities, such as "telephone text message", "text message call", etc. are not a part of

22   anyone's parlance and manifestly unreasonable. *Perez-Encinas, supra.* By contrast, common

23   phrases such "I'll call you" or "Text me" are objectively reasonable and need no explanation or

24   resolution of any ambiguity at all.

25        Importantly, the adhesion contract analysis stated here does not even hinge upon the

26   heightened standards imposed upon PayPal by the TCPA, *Satterfield* and the FCC.  With regard to

27   understanding the "Calls to You" clause, that "reasonable minds could differ" (*Lake Nacimiento*

28   *Ranch Co., supra*) or "different ultimate inferences" could be drawn (*Sankovich, supra*) which

**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT
PAYPAL, INC. FOR SUMMARY JUDGMENT**

require reference to "practical human experience" (*Nunez, supra*) is sufficient to warrant denial of Defendant's Motion.  Viewing the "Calls to You" clause in the light most favorable to Plaintiff mandates denial of Defendant's Motion. *Fairbank, supra.*

> **B.**     **Application of the TCPA and *Satterfield* to the "Calls to You" Clause Mandates Denial of PayPal's Motion.**

Contractual principles alone are sufficient to warrant denial of PayPal's motion. PayPal's burden is in no way eased through application of the TCPA to the facts at hand. As noted above, PayPal's text message advertising campaign is subject to the TCPA. *Satterfield, supra*, at 954. The text message advertisements sent while PayPal's "Electronic Communications" clause (limiting customer contact to email and the PayPal website) was in effect cannot seriously be argued to have complied with the disclosure and consent requirements of the TCPA.[2] *Id.* PayPal's later inclusion of the "Calls to You" clause in no way alters the same result with regard to recipients of subsequent text message advertisements. To prevail on its motion, PayPal must prove that the first "Calls to You" clause of the User Agreement constitutes a disclosure sufficient to satisfy PayPal's affirmative burden of proving that Plaintiff and the class clearly and unmistakably stated their prior express consent to receiving PayPal's advertising text messages. *Id.; Grant, supra.* On each element of this test, PayPal fails.

With regard to the ostensible disclosure of PayPal's text message advertising campaign, it:

- comes in the form of an adhesion contract;
- is buried in the middle of that adhesion contract;
- is stated in a type font which is no different and/or indistinguishable from any language which surrounds it; and,
- fails to even use the term "text message" in describing its intentions.

(Muller Dep. at 33:14-21, Ex. 3)

None of the terms variously used to characterize the disclosure requirement – "clear and unmistakable" (*Satterfield, supra*), "clear and conspicuous" (27 F.C.C.R. 1830 at 1831 & 1838

---

[2] Plaintiff seeks to represent all others similarly situated who received an unsolicited text message from PayPal as early as February 8, 2008, which is four years prior to Plaintiff filing this action.

1  (Feb. 15, 2012)), "plain and clear" (*Bauer, supra*) – can be applied to PayPal's disclosure, which

2  entirely fails to "call [Plaintiff's] attention to the language of the" disclosure. *Wheeler, supra.*

3        Even had an arguably proper disclosure been made, with regard to its burden of proving that

4  Plaintiff stated his clear and unmistakable prior express content to receive text messages, PayPal

5  fares no better.  As a threshold matter, Plaintiff never stated anything at all, (Roberts Dec. at ¶¶ 4,

6  5), and the User Agreement is an adhesion contract, drafted entirely by PayPal (Muller Dep. at

7  19:21-20:6).  The same goes for the webpage on which Plaintiff entered his mobile phone number;

8  it was created  by PayPal, contained no disclosure regarding the imminent sending of a text

9  message advertisement (or autodialed and pre-recorded message call, for that matter) to Plaintiff,

10  nor did it request any form of acquiescence or consent of any kind by Plaintiff to anything. (Muller

11  Confidential Dep. at 27:4-8). Moreover, even had any consent been given, it couldn't meet the

12  "clear and unmistakable" standard set by *Satterfield*, because no affirmative actions were taken – or

13  were required to be taken – by Plaintiff. (Muller Dep. at 19:21-20:6). Even assuming, *arguendo*,

14  that PayPal were able to prove that Plaintiff had affirmatively stated his clear and unmistakable

15  consent to the User Agreement, this would still be insufficient, because any putative consent must

16  be viewed in conjunction with what Plaintiff is consenting to, and the plain language of the first

17  "Calls to You" clause makes no reference to text messages. (Muller Dep. at 33:14-21, Ex. 3).

18  Finally, even were all these other inferences impermissibly viewed in PayPal's favor, it still would

19  not meet its burden, because any ambiguity associated with the first "Calls to You" clause must be

20  construed in favor of Plaintiff's reasonable understanding, rather than Paypal's.

21      **C.**    **Alleged Ambiguity in the User Agreement Does Not Satisfy PayPal's Burden.**

22        It primarily with regard to this last point – the alleged ambiguity of the term "calls" – that

23  Paypal asserts the scales tip in its favor and mandate summary judgment.  To weigh PayPal's

24  argument that the first "Calls to You" clause includes text messages, we must first crowd one side

25  of the scale with the contractual interpretation principles discussed herein, the fact that the User

26  Agreement is an adhesion contract (Muller Dep. at 19:21-20:6), the inferences that flow from that

27  finding, that the TCPA is to be construed in favor of consumers, the paucity of any disclosure made

28  by PayPal (Muller Dep. at 33:14-21, Ex. 3), the lack of clear and unmistakable consent made by

**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT
PAYPAL, INC. FOR SUMMARY JUDGMENT**

1   Plaintiff (Roberts Dec. at ¶¶ 4 & 5) and the plain language of the User Agreement. On the other

2   side of the scale is placed . . . *Satterfield*, which has (until now) been widely hailed as an important

3   victory in furthering the TCPA's purpose of protecting consumers from unwanted intrusions on

4   their privacy, which *Satterfield* extended to include text messages. *Satterfield*, at 954. PayPal

5   syllogistically asserts that *Satterfield* now stands for the proposition that:

6       - "call", broadly interpreted to include text messages for purposes of protecting *consumers*

7   *from* unauthorized text messages covered by the TCPA; must become

8       - "call", broadly interpreted to include text messages for purposes of protecting *PayPal*

9   *from liability for sending* unauthorized text messages covered by the TCPA.

10   PayPal's argument is preposterous.

11       Given that the User Agreement is an adhesion contract, any alleged ambiguities must be

12   construed against PayPal. *See Badie, supra.* Under the TCPA, PayPal has the affirmative burden of

13   demonstrating that it made a disclosure sufficient to prove that Plaintiff clearly and unmistakably

14   consented to receiving advertising texts. *Satterfield, supra.* An admittedly ambiguous disclosure

15   hardly qualifies as "clear and unmistakable," particularly when one considers the previously noted

16   lack of consent by Plaintiff. (Roberts Dec. at ¶¶ 4 & 5). The irony inherent in PayPal's position is

17   unmistakable: the exact inferences made in the favor of consumers in the 9th Circuit must be made

18   in favor of PayPal here, transforming the losing argument in Satterfield (that "calls" are *not* text

19   messages) into the winning argument here (that "calls" *are* text messages). PayPal's argument flies

20   in the face of *Satterfield*, the purpose of the TCPA and basic principles of contract law and their

21   Motion should be denied.

22           **D.    Authority Cited by Defendant is Misguided and Inapposite.**

23       Defendant cites to an FCC Report from October 16, 1992 for the contention that obtaining a

24   mobile number, with nothing more, is enough to obtain "prior express consent." *In re Rules and*

25   *Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C.R. 8752, 1992

26   WL 690928 (Oct. 16, 1992). In light of the Ninth Circuit's 2009 *Satterfield* decision, the Oct. 1992

27   FCC Ruling offers this court little guidance. More than twenty-years ago, the FCC was asked to

28   address a concern that "many commenters express [regarding] the view that any telephone

**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT**
**PAYPAL, INC. FOR SUMMARY JUDGMENT**

1  subscriber that provides his or her telephone number to a business does so with the expectation that

2  the party to whom the number was given will return the call." 7 F.C.C.R. at 8769. As a result, the

3  FCC determined that if a telephone subscriber gives his telephone number to an entity, that entity

4  can "return the call" under the "prior express consent" affirmative defense. *Id*. However, this FCC

5  Ruling did not address text messages in any way, and was decided more than fifteen-years before

6  the Ninth Circuit defined what "prior express consent" means under the TCPA. This FCC Ruling

7  does not say, and should not be read to mean, that if Plaintiff gave PayPal his mobile number –

8  with nothing more – than PayPal has Plaintiff's "clear and unmistakable" consent to send him a

9  text advertisement message.

10      Furthermore, the cases cited by Defendant do not help this Court determine whether PayPal

11  had "clear and unmistakable" consent to send Plaintiff the subject text advertisement message.  The

12  *Frausto* decision that Defendant cites for the argument that "a court already rejected a TCPA claim

13  brought by a plaintiff who provided his cell phone number to PayPal" (Def. Memo at 8) is

14  distinguishable for this case. The plaintiff in *Frausto* did not receive a text advertisement message

15  from the defendant. *Frausto v. IC System, Inc.*, Case No. 10 CV 1363, 2011 WL 3704249 (N.D.Ill.,

16  Aug. 22, 2011)(Zagel, J.). Instead, the plaintiff defaulted on a debt it owed to PayPal, and a third

17  party collections firm used the phone number the plaintiff gave PayPal in an effort to collect the

18  debt by voice-calling the plaintiff. *Id*. This very narrow practice of pursuing a debt via a phone

19  number that was provided by the plaintiff was deemed acceptable by the FCC under "prior express

20  consent." *Id*. at *2 *citing In re: Rules and Regulations Implementing the Tel. Consumer Prot. Act of*

21  *1991*, 23 F.C.C.R. 559, ¶ 9 (F.C.C. 2007).

22      For the same reasons that were previously addressed by the FCC in a very narrow way –

23  that when a plaintiff gives his telephone number, defaults on a debt, and then an entity uses that

24  telephone number to voice-call plaintiff to collect the debt the calling party as "prior express

25  consent" – the following six-cases cited by Defendant are distinguishable: *Gutierrez v. Barclays*

26  *Group*, Case No. 10cv1012, 2011 WL 579238 at *1-4 (S.D.Cal., Feb. 9, 2011)(Sabraw, J.); *Starkey*

27  *v. Firstsource Advantage, LLC*, Case NO. 07-cv-662A, 2010 WL 2541756 (W.D.N.Y., March 11,

28  2010); *Moise v. Credit Control Services, Inc.*, Case No. 11-60026-CIV (S.D.Fla., Oct. 18, 2011);

**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT
PAYPAL, INC. FOR SUMMARY JUDGMENT**

1  *Cavero v. Franklin Collection Service Inc.*, Case No. 11-22630, 2012 WL 279448 (S.D.Fla., Jan.

2  31, 2012); *Cunningham v. Credit Mgmt., L.P.*, Case No. 3:09-cv-1497, 2010 WL 3791104

3  (N.D.Tex., Aug. 30, 2010); and *Osorio v. State Farm Bank, F.S.B.*, 859 F.Supp.2d 1326 (S.D.Fla.

4  2012). Each does not concern text messages; moreover, it is worth noting that none of the subject

5  communications concerned an advertising campaign initiated by the Defendant, but rather had a

6  business purpose for the call.

7      Similarly, Defendant's reliance upon *Greene v. Directv, Inc.*, Case No. 10 C 117, 2010 WL

8  4628734 (N.D.Ill., Nov. 8, 2010) is not helpful here. In *Greene*, the plaintiff provided her telephone

9  number to Equifax and ordered a credit alert service. *Id.*, at \*1. Pursuant to that credit alert service

10  plaintiff received a voice-call regarding fraudulent use of plaintiff's identity. *Id.* As a result, the

11  court held that plaintiff gave the company who called her "prior express consent" as a result of a

12  company calling her for the very purpose plaintiff provided Equifax with her phone number. *Id.* at

13  \*2.

14      Finally, the only text message case cited by Defendant is easily distinguishable from this

15  case.  *See Ibey v. Taco Bell Corp.*, Case No. 12-CV-0583, 2012 WL 2401972 (S.D.Cal., June 18,

16  20120)(Hugg, J.). The plaintiff in *Ibey* initially contacted the defendant first by text message

17  seeking to participate in a survey. *Id.* at \*1, \*3. Defendant sent a text message to the plaintiff in

18  response. *Id.* The plaintiff then texted the defendant again to request defendant to stop further

19  communication by way of text message. *Id.* The defendant then sent one last confirmatory text

20  acknowledging it received plaintiff's "stop" text and that it would stop text messaging Plaintiff. *Id.*

21  The plaintiff's case was limited to the final confirmatory text message sent after plaintiff asked

22  defendant to stop. *Id.* The court held that the final "stop" text message did not constitute unsolicited

23  telemarking. *Id.* at \*3. Those facts are far different than the facts here. Here, Defendant had no

24  reason to believe that Plaintiff understood Defendant was going to send him a text message.

25  Defendant initially contractually mandated that Plaintiff only communicate with Defendant via the

26  website and email.  (Muller Dep. 13-15, Ex. 3). Then Defendant changed the terms in an adhesion

27  contract to ambiguous language about autodialed and prerecorded calls. (Muller Dep. Ex. 3). At no

28  time did Plaintiff consent to receive its text message advertisement. (Roberts Dec. ¶¶ 4 & 5).

**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT
PAYPAL, INC. FOR SUMMARY JUDGMENT**

PayPal may argue in reply that this Court should follow a Northern District of Alabama's decision in *Pinkard v. Wal-Mart Stores, Inc.*, No. 3:12-cv-02902, 2012 WL 5511039 (N.D.Ala., Nov. 9, 2012)(Smith, J.). The Alabama judge in *Pinkard* held that when a plaintiff gives her telephone number she also consents to receive text messages. 2012 WL 5511039 at *4-6. However, the non-precedential *Pinkard* decision is of little value as the Alabama court did not address the arguments raised by Plaintiff in this case, including: (1) the distinction between interpreting "calls" under the TCPA for purposes of protecting consumers versus "calls" in a contract under rules of contract; (2) unreasonableness of relying upon express consent in an adhesion contract; or (3) unconscionability of forcing express consent upon consumers in an adhesion contract.  Moreover, the calls came from Wal-Mart's pharmacy.  Calls made by a health care-related entity are of an entirely different character than the text message advertisements sent by Paypal here.

## V.      EVIDENCE SUBMITTED BY PAYPAL IS INADMISSIBLE

As a final matter, Plaintiff raises the following objections to the evidence relied upon by PayPal in its motion for summary judgment.

### Objections to Declaration of John Muller

#### 1.      Objection to Entirety of Muller Decl.

Grounds:   Lack of Personal Knowledge.  *See* FRE 602, FRCP 56(e), Local Rule 7-5(b).

Argument:  Mr. Muller states in boilerplate fashion that his declaration is "based upon personal knowledge obtained in the course of my duties" "[e]xcept where based on my review of PayPal's records and documents regularly maintained in the ordinary course of business."   Muller Decl., ¶ 2. Those "records and documents" are not identified or produced, and the declarant gives no indication as to which parts of his testimony are based on personal knowledge and which parts allegedly are based on these unidentified "records and documents," the veracity, foundation and admissibility of which are unknown.   Mr. Muller does state that his job responsibilities have included "managing the content of the User Agreement, either personally or through other members of the Legal team who report to me" and that he is "familiar with the process prospective users went through to register as a PayPal user during the time when [Plaintiff] registered his

PayPal account."   Muller Decl., ¶ 2.  However, his declaration testimony extends far beyond the contents of the User Agreement and the registration process when Plaintiff registered.

### 2.   Muller Decl., ¶ 5, third sentence.

Grounds:   Lacks foundation, personal knowledge, speculation as it relates to Plaintiff.

Argument:  Mr. Muller states that "the potential user, including Mr. Roberts, *would have had the opportunity* to review the terms of the User Agreement either by reviewing its terms in a scroll box on the registration page or via a link on that page taking the user to the User Agreement on a separate page."   (Emphasis added.)   But there is no evidence offered that Plaintiff in fact did so, regardless of the "opportunity" that allegedly existed.

### 3.   Muller Decl., ¶ 5, final sentence ("PayPal also makes its User Agreement available to its users and the public through a "Legal Agreements" link that appears on every page of the PayPal.com website.")

Grounds:   Lacks foundation, personal knowledge, speculation as it relates to Plaintiff and the issue of his express consent.

Argument:   What PayPal *presently* does – including whether it "makes its User Agreement available" via a link on its website - is improper to the issue of Plaintiff's express consent to receive texts, since there is no evidence that Plaintiff has ever reviewed any User Agreement containing language about text messages, let alone expressly consented to receive texts.

### 4.   Muller Decl., ¶ 7, second sentence ("According to PayPal records, Mr. Roberts created the Account and agreed to and accepted the User Agreement on September 13, 2002 at 12:21:54 Pacific Daylight Time.")

Grounds:   Violation of best evidence rule, hearsay.

Argument:   The witness is characterizing the contents of PayPal hearsay records.

### 5.   Muller Decl., Exhibit A (alleged "Activity Log.")

Grounds:   Lack of foundation, lack of authentication; hearsay.

Argument:  The witness establishes no hearsay exception simply by stating that it is a "true and correct copy of the Activity Log accessed on July 10, 2012 showing the user activity on the Account."   He does not provide testimony meeting the requirements, e.g., of the business records

exception (*see* FRE 803(6)), or even state that he "accessed" the unauthenticated document himself. To the contrary, the upper right corner of page 1 of this exhibit states that "You are logged in as Ryan Marsh".    Stating that it is a document that was "accessed" does not render it admissible.

**6.    Muller Decl., ¶ 9, second sentence** ("A true and correct copy of the revised version of the User Agreement which Mr. Roberts accepted is attached hereto as **Exhibit C.**")

Grounds:   Lack of foundation, authentication, hearsay.

Argument:  The declarant lays no foundation as to why Exhibit C is the agreement that Plaintiff supposedly agreed to, and the hearsay "Activity Log" on which the declarant appears to be relying states no such thing. The witness also sets forth no facts demonstrating that he has any personal knowledge regarding Mr. Roberts' particular facts or alleged "acceptance" of Exhibit C. This Court prohibits such conclusions in declarations.  Local Rule 7-5(b).

**7.    Muller Decl., ¶ 11, second sentence** ("PayPal posted [the 2010 User Agreement] on November 1, 2010.")

Grounds:    Relevance, lack of foundation as to any connection to Plaintiff and the issue of express consent.

Argument:  The mere fact that PayPal posted a new user agreement on its website on November 1, 2010, seven years after the 2003 agreement which PayPal claims that Plaintiff "accepted" (which concededly said nothing about text messages) is irrelevant to the question whether Plaintiff *expressly consented* to receive text messages.   There is no evidence that Plaintiff ever saw this new 2010 agreement, let alone expressly consented to its new terms (regarding "autodialed and prerecorded message calls"), or, more importantly, to  receive text messages.

**8.    Muller Decl., ¶ 11, third sentence**   ("The November 1, 2010 User Agreement provides, in pertinent part:   "**1.9 Calls to You; Mobile Telephone Numbers**.   By providing PayPal a telephone number (including a wireless/cellular telephone), you consent to receiving autodialed and prerecorded message calls from PayPal at that number.")

Grounds:   Relevance, lack of foundation as to any connection to Plaintiff and the issue of express consent.

1    Argument:  Plaintiff incorporates the immediately preceding objection by reference.

2    Moreover, even assuming that Plaintiff saw and accepted this new provision prior to receiving the

3    text message in question – a fact unsupported by any evidence from Mr. Muller and contradicted

4    by Plaintiff's own declaration – consenting to receiving "autodialed and prerecorded message

5    calls" under a heading stating "calls to you" is by no means express consent to receive texts.

6         **9.**     **Muller Decl., ¶ 15** ("Exhibit A hereto indicates that Mr. Roberts has not

7    identified another phone number since adding his Cell Number as his primary telephone number on

8    December 8, 2010.)

9    Grounds:   Irrelevant to the question of express consent.  The declarant's testimony as to

10   what Exhibit A (which is hearsay) "indicates" is based on hearsay, lacking in foundation and

11   violative of the best evidence rule.   The testimony that Plaintiff added his cell number as his

12   primary number is similarly objectionable and lacking in foundation and personal knowledge.

13

14   **VI.    CONCLUSION**

15        For the foregoing reasons, Plaintiff respectfully requests that Defendant's motion be denied.

16

17   Dated:  March 11, 2013                       **SPIRO MOORE LLP**
                                                   J. MARK MOORE
18                                                 DENISE L. DIAZ

19                                                 **BOCK & HATCH, LLC**
                                                   RICHARD J. DOHERTY
20                                                 JAMES M. SMITH

21

22                                                 By:  ___/s/  J. Mark Moore_____
                                                        J. Mark Moore
23
                                                   Attorneys for Plaintiff David Roberts
24

25

26

27

28

**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT
PAYPAL, INC. FOR SUMMARY JUDGMENT**